UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal Number: 4:20-cr-186 |
| vs. | ) |
| | ) |
| DANIELLE TAFF, | ) |
| | ) |
| Defendant. | ) |

## FACTUAL BASIS FOR PLEA

The United States of America, by and through the undersigned attorney for the Public Integrity Section, Criminal Division, United States Department of Justice, and Danielle Taff (hereinafter the "defendant"), hereby stipulate to the following facts pursuant to United States Sentencing Guideline § 6A1.1 and Rule 32 of the Federal Rules of Criminal Procedure. The defendant agrees that, had this case proceeded to trial, the United States would have proven each of the following facts beyond a reasonable doubt with admissible evidence.

At all times relevant to the Information:

1. From approximately June 2017 to June 2018, the defendant was employed as a contractor paralegal at the United States Attorney's Office for the Southern District of Iowa ("SDIA") in Des Moines, Iowa. In her capacity as a paralegal, the defendant had access to SDIA's shared electronic data storage drive, on which files related to civil and criminal matters were electronically stored. The defendant's duties and responsibilities were limited to assisting SDIA's Civil Division with asset forfeiture matters. The defendant's official duties and responsibilities did not require or authorize her to access criminal case files on SDIA's shared electronic data storage drive.

2. At the start of her employment with SDIA, the defendant received online training

about information security. The defendant was aware that she was not permitted to copy or take any non-public information, in any form, from SDIA, nor was she permitted to use SDIA's computers or network for purposes unrelated to the defendant's official duties and responsibilities.

3.    In early 2018, the Bureau of Alcohol, Tobacco, and Firearms and the Iowa Department of Narcotics Enforcement conducted a joint criminal investigation into a methamphetamine trafficking organization involving multiple subjects in Iowa and Arizona (hereinafter, "the drug-trafficking investigation"). The drug-trafficking investigation led to four indictments filed in SDIA charging more than ten (10) individuals.

4.    Reports, records, and filings related to the drug-trafficking investigation and prosecutions were stored on SDIA's shared electronic data storage drive. The files were saved in a section of the shared electronic data storage drive dedicated to SDIA's Criminal Division, under a sub-folder named after the lead defendant in the investigation.

5.    On or about May 16, 2018, while in her office at SDIA, the defendant used her U.S. Department of Justice computer to access the electronic folder within SDIA's shared electronic data storage drive containing non-public records and reports related to the drug-trafficking investigation, including but not limited to a chemical-analysis report, a search warrant report, and reports of law enforcement interviews with at least two individuals who cooperated in the investigation ("Cooperator 1" and "Cooperator 2"). The interview reports identified the names, addresses, phone numbers, dates of birth, and other identifying information of Cooperator 1, Cooperator 2, and other individuals. Using her cellular phone, the defendant took approximately thirty (30) photographs of her computer screen, which displayed various pages of the aforementioned reports and other records related to the drug-trafficking investigation. The documents that the defendant photographed contained information that was neither publicly

available nor authorized for public dissemination. Both the electronic data storage drive and the U.S. Department of Justice computer that the defendant used to access the drive were for exclusive use by the Department of Justice in furtherance of the administration of justice.

6. The defendant had no official, work-related reason to view the aforementioned reports and records, nor was she authorized to access them. In order to access them, the defendant searched through multiple layers of folders and subfolders, all of which were located under a parent folder for criminal files. The defendant was aware that she was not authorized to review documents from criminal cases, and she similarly knew that she was not permitted to photograph or otherwise take this non-public information from the files of SDIA.

7. The information obtained by the defendant in the photographed law enforcement reports was property belonging to the United States, which the Department of Justice had a right to keep confidential and in its exclusive control. At the time she obtained the information, she intended to share it with Person 1, who was not an employee of the Department of Justice or any law enforcement agency. The defendant further understood at the time she obtained the information that Person 1 was not authorized by the Department of Justice to possess the information in any manner.

8. The value of the information exceeded $5,000 based on the cost of the government facilities and employees required to produce the information. Creating the chemical-analysis report required costs associated with the shipment of the suspected narcotics; the purchase, maintenance, and use of technical equipment in a laboratory; and the time of the laboratory technician to perform the analysis and write the report. Creating the report of the search warrant and the reports of the interviews of Cooperator 1 and Cooperator 2 required costs associated with salaries of multiple government agents, including but not limited to the agents who participated in

the search, conducted the interviews, wrote the reports, and transported and maintained custody of the cooperators and the individuals arrested during the search.

9. On or about the afternoon of May 16, 2018, the defendant met with Person 1 and Person 2 for lunch in Des Moines, Iowa. During the lunch, the defendant showed Person 1 and Person 2 the photographs of the documents related to the drug trafficking investigation, including the reports of the cooperators' interviews with law enforcement authorities. In the presence of the defendant and Person 2, and with the defendant's permission, Person 1 used his/her cellular phone to photograph the images of the documents as they were displayed on the defendant's cellular phone.

10. On or about May 25, 2018, Person 1 sent the defendant a message via Facebook Messenger informing the defendant that Person 1 forgot to photograph one of the images of the documents displayed on the defendant's phone. Later that day, the defendant visited Person 1 at Person 1's place of employment and allowed Person 1 to photograph an additional image of a report related to the drug trafficking investigation as it was displayed on the defendant's phone.

11. Between approximately May 16, 2018 and May 25, 2018, Person 1 sent some or all of the images to approximately nine (9) separate individuals via Facebook Messenger. In providing the documents to some individuals, Person 1 notified those individuals that Cooperator 1 and/or Cooperator 2 had identified those individuals to law enforcement authorities as being involved in drug trafficking activity. Between May 16, 2018 and October 25, 2018, the images were further disseminated to and from individuals known and unknown over Facebook Messenger and other messaging platforms.

12. On or about October 7, 2018, a Facebook user posted approximately twenty-seven (27) images of the documents related to the drug trafficking investigation on a Facebook group

page called "des moines haterz & snitches," which is a Facebook group dedicated to outing law enforcement sources and cooperators in the Des Moines area. Among the photographs posted were images of the report of Cooperator 1's interview with law enforcement authorities, which describes the information provided by Cooperator 1 regarding individuals involved in drug-trafficking activity in the Des Moines area. The images posted to the Facebook group page were the same images that the defendant took in her office at SDIA on or about May 16, 2018.

13. On or about October 25, 2018, a Facebook user posted one image of the report of Cooperator 2's interview with law enforcement authorities, which describes the information provided by Cooperator 2 regarding individuals involved in drug-trafficking activity in the Des Moines area, to the "des moines haterz & snitches" page. The image posted to the Facebook group page was one of the images that the defendant took in her office at SDIA on or about May 16, 2018.

14. As a result of the defendant's conduct, Cooperator 1 and Cooperator 2 were publicly identified as cooperators in the drug-trafficking investigation and in SDIA's prosecution of several individuals. Cooperator 1 and Cooperator 2 were both scheduled to be sentenced for their involvement in drug-trafficking crimes in October 2018; however, as a result of their identities as cooperators having been made public, their sentencings were delayed until December 2019 while the Department of Justice investigated the leak.

15. On or about September 17, 2019, the defendant was interviewed by an agent from the Department of Justice Office of Inspector General ("DOJ-OIG") and attorneys from the Department of Justice Public Integrity Section ("PIN"). During the interview, the defendant stated in substance that on or about May 16, 2018, after photographing the documents related to the drug-trafficking investigation in her office at SDIA, she showed the photographs to Person 1 and Person

2 while they were out to lunch at a restaurant. The defendant falsely stated that Person 1 photographed the documents on the defendant's cellular phone without the defendant's permission or authority when the defendant went to the restroom and left her cellular phone on the table. In fact, as described above, Person 1 photographed the images displayed on the defendant's cellular phone in the presence of the defendant and with the defendant's permission. During the same interview, the defendant also falsely stated that she did not provide Person 1 with any additional photographs of the documents after May 16, 2018. In fact, as described above, on or about May 25, 2018, the defendant provided Person 1 with one additional image of a report related to the drug-trafficking investigation when the defendant visited Person 1 at Person 1's place of employment and allowed Person 1 to photograph the image as it was displayed on the defendant's cellular phone.

16. In a subsequent interview with DOJ-OIG and PIN on or about October 18, 2019, the defendant again falsely stated that on or about May 16, 2018, she left her cellular phone on a table while out to lunch with Person 1 and Person 2 and that Person 1 photographed the images of the documents without the defendant's permission while she was in the restroom.

Date: 10/19/2020

COREY R. AMUNDSON
Chief
Public Integrity Section

*[signature]*

Erica O'Brien Waymack
Matthew R. Palmer-Ball
Trial Attorneys
Public Integrity Section
Criminal Division
United States Department of Justice

After consulting with my attorney, I hereby stipulate that the Factual Basis for Plea above is true and accurate, and that, had the matter gone to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 10/14/20

**Danielle Taff**
Defendant

I am the attorney for Danielle Taff. I have carefully reviewed the Factual Basis for Plea above with the defendant. To my knowledge, the defendant's decision to stipulate to these facts is an informed and voluntary one.

Date: 10-14-20

**Joseph Bertogli, Esq.**
Attorney for the Defendant